Our next case is ArcelorMittal vs. AK Steel, number 17-1637. The District Court entered summary judgment of non-infringement based on collateral estoppel. That was an error. Collateral estoppel applies only where the identical issue was litigated and decided in a prior proceeding and that wasn't the situation here. AK Steel admits that its semi-processed steel, that the semi-processed steel it sells to automakers and ships to hot stampers, has both infringing and non-infringing uses. At the time of the first case, AK Steel was not being used to infringe and so it obtained a judgment of non-infringement. The situation is different today and that prior judgment doesn't give AK immunity when it later sells product that is used to infringe and it actively encourages and induces. It's not selling the infringing product, is it? It is selling a product that has infringing and non-infringing uses and then that product is being used. It's selling a steel sheet. Correct, Your Honor. And it's the same steel sheet from the prior case. Well, there's evidence that the chemical specification to it is different, but, and chemistry, AK admits, does determine the ultimate tensile strength. This chemical composition doesn't alter until after you have the hot stamping process. That's when the alteration occurs. The hot stamping process is key. AK is not a hot stamper. Correct. It's only selling sheets, metal sheets. That's correct, Your Honor. It's selling metal sheets that is, as it admits, are equally capable of infringing and non-infringing uses. Nothing has changed from the prior litigation. Well, we believe the composition of the sheets has changed somewhat, and you're correct. That matters only after they've been hot stamped. So in that sense, nothing has changed. But what has changed and what's crucial is that the sheets it's selling today are being used to create infringing products, that is, they are being hot stamped, which is the thermal treatment step of these product by process claims, and they're being hot stamped into final products that equal or exceed 1,500 megapascals in ultimate tensile strength, and that's the key difference between this case and the prior case. Well, isn't then the hot stampers the infringers in this case? They're the direct infringers. The hot stampers, absolutely. Hot stampers are direct infringers, and there are two issues here with respect to AK. One is, does it induce that direct infringement? This is a product by process claims. Yes. So how does induced infringement or contributory infringement apply when you have a product by process claim? Well, the direct infringement is using or selling the product that has been made using the process steps spelled out in the claim. So if you have direct infringement, I think it's the same as inducement in any other case, Your Honor. If a, in this case, a defendant, AK, actively encourages or directs or participates in having the infringing steps and the product produced, it's an inducer. We have the extra element here. I think that, I think AK could also be liable. How is it the inducer, Counselor? I mean, it sells a metal sheet. Yes. And it sells it to, in the industry, including to the hot stampers. The hot stampers are the ones that get it and alter it chemically through the hot stamping process. They're the direct infringers. Yes. If these, if these sheets can be used for non-infringing purposes, then how, how do we have induced infringement here? Here's how we have it, Your Honor. AK isn't selling, you know, a raw material into the market with no knowledge or no involvement in what happens afterwards. AK promotes and markets its product to automakers to meet specifications. Knowledge, knowledge alone, under the circumstances I described, knowledge alone that it's being used for infringing purposes does not grant you automatic inducement. Well, it may not grant automatic inducement, but it certainly is relevant to inducement. And we got cut off here without discovery to pursue it further. But let me, let me expand on that. What AK is doing here is they're actively promoting their, their coated steel product to automakers to make specific auto parts. There's a brochure in the record, which is cited in the briefs, where it says, here's Ultralume. This is our commercial product. It is designed to be used for hot stamping. When it's hot stamped, it can, it will have a tensile strength of 1400 megapascals or higher. And look at all the things you can make from it. And there are pictures of bumpers and door pillars and frame components. The Ultralume product at, at, when it leaves the, the, the AK gates, manufacturing gates, it's not infringing, at least there's no evidence here that shows it, that it's a product of 1500 tensile strength. It is not infringing for two reasons. One is it doesn't have 1500 megapascals, and we've never suggested the contrary. And it hasn't been thermally processed, which is a requirement of these claims. So in, that, that product standing alone with nothing more is not infringing. And that, that's what the court found was similar to the prior case. Yes. That nothing had changed. Nothing had changed in, in, in that limited universe. Yes. What has changed is that in the prior case, and, and I refer the court just by way of example to appendix pages 1061 to 63, that's testimony from the prior case where I think it was their research, AK's research manager said, yeah, what we've got as of today, we have a prototype product, we sent it out to a prototype shop for some sample hot testing, not to show whether we've got a viable product, but just to make sure that it behaves properly, that the coating doesn't come off, and then we've got to do further testing and refinement to have a product. Well, today they have that product, and they're selling it to automakers on the representation that it will meet specifications that call for. I followed that argument with interest that, that in the prior case, the AK, AK steel was, was a prototype. And in this case, you're arguing it's the actual commercial product. Right. That they're, they're producing. Correct. But even so, when you compare those two products, nothing has changed with respect to what you claim to be the infringing limitation. Here's what has changed, Your Honor. What has changed is today, the hot stamping is being performed, and it is producing parts that there, and there's no serious dispute that the parts directly infringe, and it, it's always been understood, and, and it's conceded by AK when they say it can, can be used for infringing and non-infringing purposes, that it can be hot stamped to achieve 1500 megapascals or higher. What's different today is that AK is actively promoting it to meet automaker specifications that call for an ultimate tensile strength above 1500, and it's, and it's entering into arrangements with the automakers where, now, I started to say before, it's not just selling this unprocessed raw material into the market. Before you go to, go there, I'm confused about something. Maybe you can help me. I didn't review the, the record from the last case, but I seem to recall, you, you say you never argued that there was strength in excess of 1500 megapascals, but I seem to remember some arguments that, that indeed there was. Was that in another context? That was, that was not AK's product. That was Severstall's product, and, and as to theirs, our expert said, I get 1442. As I said, I didn't, I, I just recalled something over 1500. Right, right. So the key difference, at least in your view in this case, is that there's now evidence to support that there's actual direct infringement by somebody. The prior case failed because there was no evidence of infringement by anybody of the 1500 limitation. Exactly, Your Honor. And that, and, So now we have to look at what the hot stampers are doing. Apparently, there's no dispute that the product's being processed into above 1500 in at least some instances, and so your view is that you should be allowed to re-argue because there's a new product out there essentially being produced by the hot stampers that they induced that. That's exactly right, Your Honor. And, and think about the, the consequences of the contrary view. You could have a situation where you have a product, as admitted in this case, it has both infringing and non-infringing uses. The defendant could go, Can I ask you this? Sorry to interrupt you, but it, it just occurred to me, and I'll forget the question if I don't ask. It puzzles me a little bit about how we view these claims as, in, in terms of their thing. As, it's a product by process claim, so it's not a method claim. If it was a method claim, the hot stampers wouldn't infringe either, right? Because they wouldn't perform all the steps. You would perform part, they would perform part. We'd have to get to that whole Akamai stuff. Right. But on the product by process claims, do we need to get to that Akamai stuff, or do they, because they're using a product that is made by all the steps, infringe directly? Well, the, the hot stampers, I believe they do. Although, I confess that if you look at Abbott, you can take some statements from, pardon me, from Abbott as suggesting that the defendant has, itself, has to have performed all the steps. Now the issue wasn't squarely presented there, because there were, there weren't multiple actors. But with that caveat, I would think that the final product, as long as it was produced by some sequence of steps, no matter who performed them, would infringe. But, as I said, it's not completely clear in light of language in Abbott. Right. I, I have the same, the same trouble with Abbott. And, and, you know, the issue wasn't presented. I just wonder whether, whether in some, in some way it doesn't really matter that much, because if you can actually show the facts that you're inducing them to infringe under that kind of, in theory, that they directly infringe by making it, wouldn't that same kind of standard, I mean, you have a pretty high standard to show inducement, wouldn't that same kind of standard then apply, or meet the burden that, you know, you would find for Akamai, if I join him in this case? You know, it, it probably would, but they don't, there's not a, they're not completely coextensive. You have to have, under Akamai, you know, an agreement, a common pecuniary interest, and that sort of thing, not necessarily knowledge of the patent, or an intent to induce infringement, just an intent to produce a product. And so, I can, you can imagine situations where you might find that there was inducement, but not join in, in enterprise infringement, and vice versa. But what I started to say before is, the contrary view would say that where a defendant produces a product that has both infringing and non-infringing uses, and it tries as hard as it can to induce infringement, goes out, promotes it, explains how to do it, and all that, but in its first case, it actually fails. The, the, its customer doesn't succeed in infringing. Under, under the defendant's view, then it's got perpetual immunity from inducement liability, even if it continues trying to induce infringement, and. Where is the, where, where are the acts of infringement? Are they from AK to the car manufacturer, or are they from AK to the hutch stampers? Primarily from AK to the auto manufacturer, but this is a collaborative arrangement. That's kind of backwards, isn't it? That's, that's approaching inducement, you know, putting the, putting the, the, the car before the horse. Well, I don't think so, your honor, because the automakers infringe as well. So, it's not like AK is trying to induce infringement by somebody that doesn't infringe, because they're using an infringing product. They, they get it from the hot stampers. And also, the, the way this works is the automaker purchase orders, and they're in the record, say, they, they don't just say, you know, send me some steel. They say, send me steel for this specific component, say a door pillar, pursuant to this, this specification number of mine, and you go to that specification number, and AK has the specifications. It says, among other things, the ultimate tensile strength, and ship it to this hot stamper to make it into that part. Is that, is that specification number, or the model number? Here is the specification number. Does that, does that identify that particular product suitable only for hot stamping, and, and with the result of a particular product? If I understand your question, what it says is, this is a specification for this auto, this component of my cars. It is to be hot stamped, they usually say press hardened, which is the same thing. It is to be made from press hardened steel with these, this chemical composition, which corresponds to both our product and AK's product, and, you know, formed into martensite crystalline structure and all of that. So, it, it does, I think the answer to your question is yes, if I understood your question. It does provide for how the part should be formed, and, and, and how it should end up, what the tensile strength and other characteristics should be. It identifies a tensile strength? It typically identifies a range. It'll say, in some cases, 1,300 to 1,700. In the case of some Ford specifications, a minimum of 1,500. And so, yes, it absolutely specifies a tensile strength. If the court has no further questions, I'll reserve the rest of my time. Thank you. Your Honors, Christopher Sipes for defendant AK Steel. Let me begin by correcting what I believe is a misstatement by counsel. AK Steel has never conceded that there are any infringing auto parts, or any direct infringement by anyone of these patent claims. In fact, what they seem to be citing is our discussion in response to their original assertion of contributory infringement, that even if our steel were capable of infringing uses, there's already been established substantial not. There is no evidence. What's the, what's the basis for your statement that there's, there's no steel that, that is infringing? Is it because there's no steel in the market that reaches a 1,500 megapascal steel? No, Your Honors, because no auto part manufactured, certainly after this patent issued in June of 2014, but no auto part of any kind has been identified or induced by a plaintiff's ear above 1,500 made from our steel. We've been through a litigation already, and that's the key point here. There's nothing different. We litigated this before. That's what we don't know, because this was cut off at collateral estoppel without discovery. Your steel prior wasn't being used by commercial hot stampers, right? Well, the key thing, that's, well, what was going on last time, Your Honor, is we were seeking to qualify our steel for sale to these very same specs, which they're now being sold to. And we litigated the question of whether or not our manufacturer of this steel and marketing to those specifications. But the evidence in the prior record, the only evidence about what your steel was being used for was this prototype testing. It had never been used by commercial hot stampers, right? That is correct, Your Honor. And is it possible that the evidence and facts have changed now that the commercial hot stampers can manufacture your steel or hot stamp your steel to above a 1,500 tensile strength? It's possible that it can be hot stamped, but the key point there is that was the evidence in the last case, too. Remember, the Severstall system... Yes, but there wasn't any evidence to support an act of direct infringement there. But... But there could be now. But in the past case, ArcelorMittal also sought an injunction to prevent us from... I don't see how that matters. You're saying that you're getting up here and talking about the fact that there's no proof of direct infringement even today, but there was no discovery allowed into that question. And, Your Honor, I think the reason for that is because... Let me ask you hypothetically. If one of the commercial hot stampers you ship to is manufacturing this steel into above 1,500 and you have sold it to the car company and entered into agreements directing the commercial hot stamper to stamp it above 1,500 with full knowledge and intent and everything else you need for inducement, wouldn't that make you liable for inducement? I don't believe so, Your Honor. I believe that's exactly what the Brain Life case was about, Your Honor. Let me ask you this. Is it your position that if A.K. Steel had conclusive new evidence that they could have put into the record, that your sheets, when hot stamped, achieved strength greater than 1,500 megapascals, that that would not create a material difference? I don't believe so, Your Honor. I think the reason is because our conduct would be the same as what was litigated in the last case. We would still be manufacturing the same product and I can go through all the record evidence that this is the same. Do you manufacture any product that meets the 1,500 level? We do not, Your Honor, and that's undisputed. How do we know that? Actually, Arsenal and Towson Council just admitted it, that when it leaves our factory, when we sell it to the automaker, it's about 600 megapascals. It hasn't been thoroughly treated. There's no dispute here that you don't directly infringe this patent, but you're not saying that you don't manufacture steel... I was about to say that was double negative. Let me avoid that problem. You do manufacture steel that, when hot stamped, can go above 1,500. That's correct, isn't it? We're not sure that our steel can be hot stamped that high. But even if that were true, and it was true of Severstall's product in the last case... You're not sure that there's any steel that can be stamped that high? Oh, our steel. We're not sure that our steel can be. You're not sure? Because when they tested it in the last litigation, they only achieved 1,450. Wait, wait, wait, wait, wait, wait, wait, wait, wait, wait a minute. The auto manufacturers are putting out specs calling for steel in excess of 1,500. Is that not correct? There's multiple specs, some above 1,500, some that don't require 1,500. So the answer is yes. They are putting out some specs for an excess of 1,500, and they are specifically calling, according to your opposing counsel, for your product to be provided to the hot stampers. Is that correct? They purchase our steel, they select the hot stamper, and they choose the application. That is correct, Your Honor. So, at least indirectly, does that tell us that it's in excess of 1,500? It depends on what the automotive manufacturers are choosing to use to take with our steel. What we do... But you just said... Have you ever sold to an auto company whose specification was 1,500 or above? Correct, Your Honor, that was even in the last case. So either you're selling them steel that's not capable of meeting their specifications, which I'm sure you're not doing, or it's capable of going above 1,500. It doesn't work either... both ways. Your Honor, the problem is that the specifications have a range of UTS. Yes, but your friend said that some of them are above 1,500. For some parts, the specification's above 1,500. But you told us earlier... But the specification... Wait, wait, stop. You told us earlier that you didn't know if it went above 1,500. That's correct, Your Honor. Have you ever sold steel for a specification for a specific part that has to go above 1,500? The evidence, Your Honor, is we don't sell the steel for a specific part. And let me try to explain how this works. Isn't the problem here, what we're talking about, is the fact that we don't know any of this because the district court relied on an improper estoppel basis and didn't allow discovery on this. I don't think so, Your Honor. I think the key here is our commercial activity is exactly the same as before. It doesn't matter, though. I mean, your view is that you could... If that's the case, then you could never induce. But clearly, if your steel is sold with the intent that it turns into an above 1,500 seal and you direct somebody to do it, and you meet all the other standards for inducement, you've induced infringement. That was what was litigated the last time, that selling to the automakers, where the automakers select what the part is, what part of the spec it will make, so that the spec wasn't induced. You didn't win there because you didn't... You proved that you didn't induce or you didn't encourage or anything like that. You won there because the specific evidence on whether there was a directly infringing product showed that there was no directly infringing product. Here, the facts have changed. We have no idea whether there's a directly infringing product, although I think from the record, we have a pretty good sense that there is. Your Honor, I'm not quite sure that the judgment was that limited because in the case of the Seversol seal, they had hot stamped above 1,500. They showed that it was capable of that use and they were selling to the very same specs. But there was still a failure proof on inducement. There was still a judgment of no inducement. What we are doing is exactly what BrainLite says we can do, which is engage in the same allegedly infringing commercial activity of marketing the same steel to the same specs. Otherwise, this case will never end. They'll never be reposed because they can always come in and say, well, now your intent has changed. Now, another thing which is pretty important here is they're saying, aha, now there are these infringing auto parts. Well, that's not what we make and they have not produced any evidence of any infringing auto part made with our steel. Well, let's work backwards. The auto companies are asking for some parts that exceed 1,500 pillars probably, for example, and they're using specifically asking for your product to be provided to a particular hot stamp and the hot stamp is providing those products. So has your company been sued by any of the auto manufacturers for failing to provide a product that meets those specs? No, Your Honor, and the reason is the automakers are choosing when they buy our steel which part, which part of the spec that it's hot stamped into when they designate the hot stamper and communicate with the hot stamper. We just sell our steel to this overall spec to the hot stampers. We don't choose the application. The testimony in the record, this is in A623, page 76, line 17. We are promoting our product to our customers so they can use it wherever they want. We don't specifically go out and say, use it for bumpers. But you do advertise it in that fashion, do you not? I don't believe so, Your Honor. I think what we advertise it to is that it will achieve 1,400 and above. We show parts that would be satisfied with our steel, but it's up to the automakers who set their own specs when they buy our steel to select a specific part. And when they ship it to the hot stamper, that part of the forming into a particular part and the UTS, the tensile strength, is between them. We have no idea. The record doesn't show that we have any idea what particular parts are being made with our steel because that's not how they buy our steel. Are you advertising that you can manufacture steel with a 1,400 and above strength? Correct. And the testimony is that that's what... I'm sorry, is that correct? 1,400 and above is the language. You do advertise that? Our brochure says 1,400 and above. And of course... But you're arguing that you don't know for sure if any steel with 1,500 and above is sold or not. The testing that was done, and it was litigated in the last case, was just under 1,450. Now it's 1,400 and above. You advertise sales of steel with the strength of 1,400 and above. 1,400 and above, that's right, Your Honor. So there's a possibility that you are selling at 1,500 and above. Well, the record... We were required to produce all of our specs and the specs we sell to... Isn't this why discovery is necessary in order to find out if, in fact, you do have sales at 1,500 and above? They did... There was discovery on whether or not we assure up to there, and the testimony was that we do not assure above 1,500. This is at Appendix 637, 131, 21 to 132.1. We actually represent that our product will fall within the range of 1,300 to less than 1,500. So, in fact, there was discovery on that question. And the testimony was that... Was that discovery in this case? That was discovery in this case. Your Honor, so that, in fact... Where is that? You say 637? Appendix 637. It's at Line 131, 21 to 132.1. Did your opponents ever seek discovery on a relationship between AK Steel and the hot stampers in the commonwealth? Yes, Your Honor. In fact, that was much of the discovery in the 050 case. But not in this case. In this case, Your Honor... It wasn't allowed in this case. The discovery that was allowed in this case was what our specifications were, the specifications we were selling to, what we were representing the steel as. And that was... The discovery was there, and there was no evidence we were promoting above 1,500. And the activity, the specifications we're selling to, the steel we're selling, the commercial activity is exactly what was found non-infringing in the 050 case. We need, at some point, to have repose. This is eight years this has been going on. We are seeking repose in this case. What the evidence shows is we are not inducers. We sell our product to automakers. The automakers select the hot stamper, select the hot stamping process. That's all in the record. They themselves admitted in their blue brief, each commercial hot stamper uses its own process with its own equipment. This is blue brief at 23. The UTS will vary as a result of each hot stamper having its own equipment and procedures. Just real quickly, what are some of the other non-infringing uses of your product? There are a variety of parts. The specs are all in the record. There are many parts that do not require a UTS above 1,500. The UTS range, there's a chart, Appendix 1773, and you'll see many parts are down around 1,300 and some around 1,400. There's competing benefits to each, as I understand it, and I'm no expert. As the strength is lower, typically the formability is slightly higher so that there's a greater ability to form without breaking. But my understanding, in any event, is that there are many, many parts that do not meet 1,500. Your products aren't only directed at the below 1,500 market, right? Our products are. When you sell this, you don't say not recommended for hot stamping above 1,500. Your Honor, we don't assure above 1,500, but it's up to the automakers to decide what to do with our steel. All we do is market our steel to the automakers, telling them we'll meet the chemistry of these specs, it's been qualified, they understand the properties. They select who hot stamps it, how it's hot stamped, what parts are made from it. No party is adduced here any evidence of direct infringement that there is a part out there that was made from AK steel steel that has a UTS above 1,500, certainly since this patent issue. Is your product sold for the 2012 Mustang front bumper? They raise your Honor, I don't know. I should point out that the patent here to June 2014, so there would be no infringement from that. I think the question even was asked, as I recall. There was no answer, or for the Jaguar. So how you can say that that was established when these questions weren't answered is beyond me. Your Honor, I think that sort of flips things around here a little bit. We litigated the case. We were judged not infringing, not to induce infringement. Here we are again, immediately thereafter, no evidence that anything has changed, and we're being forced once again to defend ourselves in court. Our view is that's exactly what brain life is about. Having been a judge, not infringers, we can continue the same commercial activity without having to once again be in court, facing exactly the same patent and the same plaintiff. Thank you, Your Honor. If there's no further questions. Thank you. Counselor, I'll restore you to four minutes. Thank you, Your Honor. Hopefully I won't need it. Just a few points. First, on this notion that there is no evidence of any infringing product made using their steel. That's just wrong. We put in declarations that General Motors provided information concerning steel obtained from AK that was hot stamped and went up the UTS-1 above 1500. That's Appendix 460 to 61 and 1362 to 66. Pardon me. There's also the Ford parts that Judge Wallach, I think, you referenced at 1500. We don't know whether that's AK steel because we couldn't get an answer to that question. However, excuse me. Pardon me. Got a bit of a cold. But we do know that AK sells for all Ford uses, including that one. On this notion that it doesn't represent that its steel will reach 1500, at Appendix page 640, and there's a question, well, don't you? And this is following testimony concerning the Ford specifications, including the 1500 ones. At 640, transcript page 142, well, don't you have to, doesn't AK steel have to meet that specification for the ultimate tensile strength of the final product? We have to meet those specifications to Ford. So they are. In the prior litigation, did you seek discovery on the relationship between AK steel and the stampers and the auto manufacturers? At that, pardon me, at that time there was no, there were no sales to, there were certainly no completed sales to any automakers. Did you seek discovery on the relationship between these? I believe we did seek some then, but of course, the relationship is different now because sales are actually occurring, products are actually being made, they're actually being hot stamped and delivered, and that discovery we were. I thought the answer to that was also yes, that you did seek discovery on those relationships. Shouldn't you be precluded now from additional discovery? No, absolutely not, Your Honor, because the conduct today is different. There were no sales, there were no, there were no hot stamped commercial products back then, there were no products to reach 1500. All of that is different today. This brochure that we've been talking about, that came out after the last trial. That was where they say we can reach 1400 and above if you hot stamp it and you can make these parts. So it's completely different now. We sought that discovery now by way of the 56D Declaration, and we weren't allowed to get it. So, Your Honor, whether or not, and I think we probably did seek it back then, but the situation today is very different. Is the brochure the one at 1088, right? Yes, that's correct, Your Honor. And so that is, you know, that's just, it's a different situation, and we're entitled to discovery into that. One final point, this notion that they're not sure whether their steel can reach 1500, apart from the fact that they represent that it can. At appendix page 702, this same research manager, this George Peraskos that I mentioned earlier, he was asked, well, if your steel is processed properly, that is with the hot stamping process, can it reach a thousand? He said, yeah, it could reach a thousand. And then he says, could it be over 1500? Yes, it could. And moreover, in their brief at page 57, they say it can be put to infringing uses. It can only infringe if it's over 1500. So this notion that they don't know, and it's a complete mystery whether it can reach 1500, that's just not true. If the Court has no further questions, I will. No, we thank you. Thank you. Thank the party for the argument.